UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

JOSHUA RABEL,
ANDREA RABEL,
and N.R.,

Plaintiffs,

Case No. 20-cv-821

v.

NEW GLARUS SCHOOL DISTRICT,

Defendant.

**DEFENDANT'S BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs Joshua Rabel, Andrea Rabel, and their daughter N.R. filed the present suit alleging violations of unidentified "civil rights" pursuant to 42 U.S.C. § 1983 arising out of incidents that occurred when N.R. was attending classes in the New Glarus School District (the "District") during the 2018-19 school year. Specifically, Plaintiffs allege that the District violated Plaintiffs' "civil rights" when the District and its employees allegedly (1) denied Plaintiffs' requests for additional educational services through N.R.'s individualized education plan ("IEP"); (2) used seclusion and restraint/force to control N.R.'s behavioral outbursts; (3) requested assistance from law enforcement to address N.R.'s physical behavioral outbursts, pursuant to N.R.'s IEP; and (4) retaliated against Plaintiffs after they filed a complaint with the Wisconsin Department of Public Instruction ("DPI") by (a) suspending N.R., (b) changing N.R.'s school routine with the intent of causing behavioral outbursts, (c) adding the provision into N.R.'s IEP related to contacting law enforcement to assist with physical behavioral outburst, (d) failing to

provide notice and accommodation to allow N.R. to attend class field trips, and (e) changing N.R.'s school placement.

All of Plaintiffs' claims are subject to the administrative remedies exhaustion requirement of the Individuals with Disabilities Education Act ("IDEA"). While Plaintiffs have attempted to plead their claim for an unidentified violation of civil rights pursuant to § 1983, IDEA dictates that Plaintiffs first exhaust those claims that seek relief for denial of N.R.'s free appropriate public education ("FAPE"), which includes all claims brought herein. While the claims are ***labeled*** as violations of § 1983, the true gravamen of Plaintiffs' Complaint is a denial of a FAPE. Because Plaintiffs have not exhausted those claims subject to IDEA exhaustion, this Court must dismiss Plaintiffs' claims.

Further, to the extent Plaintiffs' claims are not dismissed for failing to exhaust under the IDEA, Plaintiffs' claim for declaratory and injunctive relief must be dismissed because Plaintiffs are not entitled to such relief for past actions.

Finally, to the extent any of Plaintiffs' claims remain after the disposition of this motion, Plaintiffs should be ordered to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) to identify what "civil rights" have been purportedly violated.

## STANDARD OF REVIEW

The legal standards governing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) are well established. A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint for failure to state a claim upon which relief may be granted." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (citing Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The claim must be comprised of enough

factual information to suggest a plausible entitlement to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 556 U.S. 662, 173 L. Ed. 2d 868 (2009).

**FACTS**

Plaintiff N.R. is a disabled minor diagnosed with Down Syndrome and Autism Spectrum Disorder. [Dkt. 1, ¶¶ 2, 12.] N.R. is a student enrolled in the District. [Dkt. 1, ¶¶ 2, 11.] N.R.'s education within the District is governed by her IEP, pursuant to the Individuals with Disabilities in Education Act ("IDEA"). [Dkt. 1, ¶ 14.]

The following allegations are taken directly from Plaintiffs' Complaint. While the District disputes these allegations, that allegations are assumed true solely for purposes of the pending Motion to Dismiss. According to Plaintiffs' Complaint, by the fall of 2018 the services provided to N.R. pursuant to her IEP "were not keeping up with [her] needs." [Dkt. 1, ¶ 16.] Plaintiffs requested behavioral therapy to address N.R.'s increasing difficulties, which were denied by the District's Special Education Director Jennifer Krantz. [Dkt. 1, ¶ 17.] Krantz's denial of behavioral therapy "led to greater and greater struggles for N.R." [Dkt. 1, ¶ 18.] Krantz remained indifferent to N.R.'s problems and refused to "take timely action to provide needed services." [Dkt. 1, ¶ 19.]

As a result of the denial of behavioral therapy, N.R. began having more episodes of behavioral outbursts. [Dkt. 1, ¶ 20.] The District used physical force and seclusion to address N.R.'s increasing behavioral outbursts.[1] [Dkt. 1, ¶ 20.] On one occasion, Krantz and another special education teacher removed N.R. from a bathroom and, as a result, N.R. physically resisted. [Dkt. 1, ¶ 37.] After N.R. resisted, N.R. was placed in a "time out room" and was made to apologize for her actions. [Dkt. 1, ¶ 38.] On another occasion, after a behavioral problem which resulted in

---

[1] Plaintiffs allege that the District's use of force and seclusion was "outside – and sometimes far outside – [the] legal conditions" wherein such mechanisms are permitted. [Dkt. 1, ¶ 24.] This legal conclusion is not accepted as true by the Court on a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).

Joshua Rabel being called to the school to pick up N.R., N.R. was pinned to the floor after she refused to comply with verbal orders. [Dkt. 1, ¶¶ 40, 41(c), 41(d).]

Plaintiffs filed a special education complaint[2] against the District with DPI at some point after March 29, 2019. [Dkt. 1, ¶ 49.] After Plaintiffs' filed the complaint, N.R. was suspended on April 15, 17, and 18, 2019 [Dkt. 1, ¶ 50(a)]; N.R.'s school routine was changed to include things known to her IEP team to trigger behavioral outbursts [Dkt. 1, ¶ 50(b)]; N.R.'s IEP was modified to include a provision whereby the District would contact law enforcement if N.R. struck any staff member three times with intent[3] [Dkt. 1, ¶¶ 43, 50(c)]; the District failed to provide notice and accommodation to allow N.R. to attend class field trips [Dkt. 1, ¶ 50(d)]; and the District changed N.R.'s school placement so that she would attend classes outside of the District [Dkt. 1, ¶ 50(e), (f).]

## ARGUMENT

### I. IDEA REQUIRES EXHAUSTION OF ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT.

IDEA provides certain rights and protections to children with disabilities as it relates to the educational services they are provided. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017) (citing 20 U.S.C. § 1400 *et seq.*). While the IDEA does not "restrict or limit the rights" or remedies afforded under other federal laws, it does require that a plaintiff first exhaust the administrative procedures of the IDEA before proceeding to court on other claims. *Id.* Exhaustion under IDEA is required when the "gravamen" or essence of a complaint is the denial of a free appropriate public education – which is the fundamental guarantee of the IDEA. *Id.* A free appropriate public education ("FAPE") includes "'instruction' tailored to meet a child's

[2] This complaint is not a due process hearing request under IDEA.

[3] Plaintiffs strongly opposed the IEP modification, but it was put into place over Plaintiffs' objections. [Dkt. 1, ¶ 44.] Between April 23 and June 3, 2019, the District did call law enforcement pursuant to the IEP provision seven times. [Dkt. 1, ¶ 46.]

'unique needs' and sufficient 'supportive services' to permit the child to benefit." *Id*. (citations omitted).

When issues regarding the IEP or FAPE arise between parents/guardian and schools, the IDEA has procedures that a parent/guardian may utilize including filing a complaint and proceeding to a due process hearing. *Id*. (citations omitted). At the end of the administrative procedure, if the parent/guardian is still dissatisfied, the parent may then file a civil action. *Id*. Under the IDEA, a parent/guardian ***must*** exhaust these administrative procedures before filing a civil action when "seeking relief that is also available" under the IDEA. *Id*. at 750 (citing 20 U.S.C. § 1415(l)).

The IDEA exhaustion requirement "hinges on whether a lawsuit seeks relief for the denial of" a FAPE. *Id*. at 755. If the essence of the lawsuit seeks relief for a denial of a benefit necessary for a child's FAPE, a parent cannot allege a violation of another federal act without ***first*** exhausting the IDEA procedures available. *See id*., at 754. If, however, the lawsuit seeks relief for the denial of a benefit which is ***not*** necessary for a child's FAPE but which may be required under another statute, that claim does not need to first proceed through the IDEA procedures before suit. *See id*. In sum, IDEA procedures must be exhausted before suit when "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id*. at 755.

To assist in determining whether a complaint centers around the denial of a FAPE or some other form of disability discrimination, the Supreme Court in *Fry* identified questions that a District Court could consider. *Id.* at 756. Specifically, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was ***not*** a school – say, a public theater or library? And second, could an ***adult*** at the school – say, an employee or visitor

– have pressed essentially the same grievance?" *Id*. (emphasis in original). If the answers to those questions is "no," the complaint is likely concerning a FAPE even if it does not expressly identify so in the complaint. *Id*.

The Supreme Court in *Fry* also noted that the procedural history of the proceedings should be considered in evaluating whether exhaustion is required. *Id*. at 757. Specifically, the court should ask: did the plaintiff previously invoke the IDEA proceedings to handle the dispute before "switching midstream" to filing a complaint? *Id*. "A plaintiff's initial choice to pursue [the IDEA] process may suggest that she is indeed seeking relief for the denial of a FAPE – with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy." *Id*. Indeed, a prior invocation of administrative remedies "will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, ***even if the complaint never explicitly uses that term.***" *Id*. (emphasis added).

## II. PLAINTIFFS' § 1983 CLAIM PREMISED ON A DENIAL OF EDUCATIONAL SERVICES, PHYSICAL FORCE AND RESTRAINT, CHANGES TO N.R.'S IEP RELATED TO LAW ENFORCEMENT, AND ALL ACTIONS PURPORTEDLY DONE AFTER THE WISCONSIN DPI COMPLAINT MUST BE DISMISSED FOR FAILING TO EXHAUST PURSUANT TO IDEA.

Plaintiffs have four accusations that form the foundation for their § 1983 claim. Plaintiffs allege that the District violated their "civil rights" when the District or its employees (1) denied Plaintiffs' requests for additional educational services through N.R.'s individualized education plan ("IEP"); (2) used seclusion and restraint/force to control N.R.'s behavioral outbursts; (3) requested assistance from law enforcement to address N.R.'s physical behavioral outburst, pursuant to N.R.'s IEP; and (4) retaliated against Plaintiffs after their filed a complaint with the Wisconsin DPI by (a) suspending N.R., (b) changing N.R.'s school routine with the intent of causing behavioral outbursts, (c) adding the provision into N.R.'s IEP related to contacting law

enforcement to assist with physical behavioral outbursts, (d) failing to provide notice and accommodation to allow N.R. to attend class field trips, and (e) changing N.R.'s school placement.

However, Plaintiffs' claim, premised on these four accusations, fundamentally asserts the denial of a FAPE and, accordingly, Plaintiffs were required to exhaust their administrative remedies pursuant to IDEA prior to bringing this lawsuit.[4] Because Plaintiffs failed to do so, their § 1983 claim must be dismissed.

***a. Plaintiffs' claim premised on the denial of educational services through N.R.'s IEP must be dismissed for failing to exhaust.***

The alleged denial of behavioral therapy for N.R. is a clear example of a claim that requires exhaustion of administrative remedies before suing. Plaintiffs' Complaint alleges that starting in the fall of 2018, N.R.'s IEP failed to address N.R.'s needs and, as a result, N.R. exhibited the behavioral issues identified in her Complaint. [Dkt. 1, ¶¶ 16, 18.] Plaintiffs also allege that they spoke to the District's Special Education Director to request behavioral therapy to address these resulting behavioral issues. [Dkt. 1, ¶ 17.] Despite evidence of N.R.'s increasing behavioral problems (detailed in Plaintiffs' Complaint) which purportedly resulted from the deficiency of the IEP, Plaintiffs allege that the District's Special Education Director still refused to provide the requested accommodation. [Dkt. 1, ¶ 19.] As a result, Plaintiffs allege their rights were violated. However, because Plaintiffs failed to exhaust the administrative process, the claim premised on a denial of services must be dismissed.

Appellate courts, including those within the Seventh Circuit, have ***repeatedly*** and ***unequivocally*** upheld the dismissal of federal claims premised on a denial of education services

[4] Courts have interpreted "gravamen" as requiring an analysis of individual claims, so that "claims that arise from the same events but do not involve a FAPE do not 'get swept up and forced into administrative proceedings' along with claims that do." *J.L. by & through Leduc v. Wyoming Valley W. Sch. Dist.*, 722 F. App'x 190, 193 (3d Cir. 2018) (citations omitted). Accordingly, while Plaintiffs technically only asserted one claim in their Complaint, there are four distinct aspects of their claim which much be examined individually on this motion.

when claimants fail to exhaust under the IDEA. *See, e.g., Waters v. South Bend Community School Corp.*, 191 F.3d 357, *2 (7th Cir. 1999) (upholding dismissal of claim for failing to exhaust denial of educational services); *M.S. v. Maple Newtown School Dist*., 635 Fed. Appx. 69, 72 (3rd Cir. 2015) (same); *S.D. by A.D. v. Haddon Heights Board of Education*, 722 Fed. Appx. 119, 128 (3rd Cir. 2018) ("…the theory behind Appellants' grievances focuses in large part on Appellee's failure to provide special instruction to meet S.D.'s educational needs arising from his disability, so that their claims relate to the provision of a FAPE as defined by the IDEA."); *Wellman v. Butler Area School District*, 877 F.3d 125, 133-34 (3rd Cir. 2017) (upholding dismissal of claim for failing to exhaust denial of educational services); *Durbrow v. Cobb County School District*, 887 F.3d 1182, 1190-91 (11th Cir. 2018) (same); *M.S. v. Marple Newtown Sch. Dist.*, 635 F. App'x 69, 72 (3d Cir. 2015) ("… the allegations that the School District 'excluded' [plaintiff] from participating in the school's education program or denied her the benefits and opportunities of the program all relate to the School District's provision of an 'appropriate public education' to [plaintiff] under Section 1415 and could have been raised during the IDEA administrative process. Accordingly, the School District Court [*sic*] properly dismissed Appellants' accommodation claim."); *see also Stanek v. St. Charles Community Unit School Dist. No. 303*, 783 F.3d 634, 640-41 (7th Cir. 2015) (noting that a denial of services required under IEP stated a claim for denial of a FAPE).

These decisions and numerous others make clear that Plaintiffs' claim, premised on the purported inadequacy of N.R.'s IEP and denial of requested services, is subject to the administrative process under the IDEA. Having not exhausted that administrative process, the claim must be dismissed.

***b. Plaintiffs' seclusion and restraint/ force claim is subject to dismissal for failing to exhaust.***

Plaintiffs also allege that after the District denied Plaintiffs' request for behavioral therapy, N.R. began having more episodes of behavioral outbursts and the District used physical restraint and seclusion to address N.R.'s increasing behavioral outbursts. [Dkt. 1, ¶ 20.] Plaintiffs assert that the District responded to N.R.'s behavioral outbursts with seclusion and restraint, rather than appropriately responding with behavioral therapy. At its core, Plaintiffs' seclusion and restraint claim is fundamentally premised on the denial of a FAPE.

Plaintiffs' claim could not have arisen outside of the educational context. It is hard to imagine another situation whereby an individual could be subjected to seclusion or physical restraint in a classroom other than in an educational setting. [*See* Dkt. 1, ¶ 38.] Further, this is not the sort of claim that an adult visitor to the elementary school could similarly assert, because they would not be a student subject to control or direction by District employees. *See Fry*, 137 S. Ct. at 756-57. Contrasted against the ramp example in *Fry*, the focus of Plaintiffs' educational seclusion and restraint claim becomes clear: Plaintiffs' claim seeks relief for the denial of N.R.'s FAPE because they allege that the District's actions were undertaken to control N.R.'s behavior which allegedly was caused by the District's failure to provide special education accommodations to her.[5] [Dkt. 1, ¶¶ 16-20.] Further, Plaintiffs allege that such actions caused N.R. to "be effectively unable to use the services and benefits of her local school district" – or, in other words, that she has been denied a FAPE. [Dkt. 1, ¶ 52.]

---

[5] This chain of events ultimately resulted in the denial of a FAPE, thus making the claim subject to exhaustion under the IDEA. *See also McMillen v. New Caney Independent School District*, 939 F.3d 640, 645 (5th Cir. 2019) ("McMillen treats the failure of his 2015–16 IEP as the precipitating event for all that followed his junior year. … The IEP was thus the reason McMillen was in the English class where he lasted only about a month before the behavior problems that resulted in the criminal charge.").

While there are no Seventh Circuit decisions subsequent to *Fry v. Napoleon Community Schools* that address seclusion and restraint claims, other appellate courts have ruled on seclusion and/or restraint claims and repeatedly concluded that such claims require exhaustion because they fundamentally relate to the denial of a FAPE. These cases are analogous and support the conclusion that educational seclusion and restraint claims are subject to exhaustion.

For example, the Third Circuit Court of Appeals concluded that a student's claim premised on a bus driver's use of restraints, which were "painfully [and] forcefully" used on a plaintiff to keep him secure on a bus was ultimately premised on the denial of a FAPE. *J.L. by & through Leduc v. Wyoming Valley W. Sch. Dist.*, 722 F. App'x 190, 193 (3d Cir. 2018). In coming to that conclusion, the Third Circuit relied on the questions posed in *Fry* and noted that "[t]he use of restraints would not have occurred outside the school setting and[ ] ... a nonstudent could not (and would not) have pressed essentially the same grievance." *Id.* (internal quotation marks omitted; citation omitted). Additionally, the Third Circuit noted that allegations of impacts on educational opportunities and achievement further support that the claims are subject to IDEA. *Id.* at 194. These two points – the fact that the claim could not arise outside a school setting and the allegations of educational impacts – are present in this matter and weigh in favor of applying IDEA exhaustion requirements.

Likewise, the Eighth Circuit also concluded that a claim premised on purportedly unauthorized use of isolation and restraints in a school setting was subject to exhaustion under the IDEA. *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 947 (8th Cir. 2017). In coming to that conclusion, the Court noted that the plaintiffs asserted that the student was "entitled to educational services and protections available under the Individuals with Disabilities Education Act of 1975" and that the plaintiff was "entitled to reasonable accommodations for his disabilities." *Id.* at 949

(internal quotation marks omitted). The Eighth Circuit concluded that the allegations, at their core, were for a denial of a FAPE. *Id*. Like the plaintiff in the Eighth Circuit case, Plaintiffs allege that N.R.'s education is directed by her IEP and IEP team and that as a result of the actions pled in her Complaint, N.R. is "unable to use the services and benefits of her local school district." [Dkt. 1, ¶¶ 14, 52.]

The allegations supporting Plaintiffs' seclusion and restraint claim, when viewed in light of the Supreme Court's explanation in *Fry* and the two appellate decisions from the Third and Eighth Circuits, are allegations fundamentally that N.R.'s educational benefits were impacted by a school's disciplinary practices. In short, these are allegations that the District deprived N.R. of her right to a FAPE. Accordingly, the seclusion and restraint claim is subject to IDEA exhaustion and, having not exercised those administrative remedies, Plaintiffs' claim must be dismissed.

***c. Like the denial of services claim, Plaintiffs' claim premised on the change to N.R.'s IEP related to law enforcement falls squarely within the IDEA and must be dismissed for failing to exhaust.***

Plaintiffs allege that, over their objections, N.R.'s IEP was changed to include a provision whereby the District would contact law enforcement if N.R. struck any staff member three times with intent. [Dkt. 1, ¶¶ 43, 44, 50(c)]. Plaintiffs then allege that the District did, in fact, call law enforcement seven times pursuant to that IEP provision. [Dkt. 1, ¶ 46.]

Plaintiffs' claim is a challenge to a provision of N.R.'s IEP. Like the denial of services claim, a challenge to N.R.'s IEP falls squarely within the parameters of the IDEA and numerous appellate courts have upheld the dismissal of such claims when a plaintiff fails to exhaust. *See, e.g.*, *Sanchez v. District of Columbia*, 815 Fed. Appx. 559, 561 (D.C. Cir. 2020) (upholding dismissal of claim seeking to challenge IEP for failing to exhaust); *L.K. v. Sewanhaka Central High School*, 641 Fed. Appx. 56, 58 (2nd Cir. 2016) (noting that challenge to adequacy of IEP was subject to exhaustion); *Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*,

288 F.3d 478, 487 (2nd Cir. 2002) (noting that the "administrative system is uniquely well suited to review the content and implementation of IEPs" and upholding dismissal for failing to exhaust such issue); *Stropkay v. Garden City Union Free School Dist.*, 593 Fed. Appx. 37, 42 (2nd Cir. 2014) (upholding dismissal of claim seeking to challenge the adequacy of IEP for failing to exhaust); *see also Carroll v. Lawton Independent School Dist. No. 8*, 805 F.3d 1222, 1229 (10th Cir. 2015) (exhaustion under the IDEA "is not limited to challenges to a child's IEP"). Because Plaintiffs' challenge to the provisions with N.R.'s IEP falls squarely within the parameters of the IDEA, the claim is subject to exhaustion. Having not exhausted that procedure, Plaintiffs' claim must be dismissed.

***d. Plaintiffs' retaliation claim, which is related to a denial of a FAPE, is subject to dismissal for failing to exhaust.***

Finally, Plaintiffs' Complaint alleges that the District retaliated against N.R. after Plaintiffs filed a complaint with the DPI by (a) suspending N.R., (b) changing N.R.'s school routine with the intent of causing behavioral outbursts, (c) adding the provision into N.R.'s IEP related to contacting law enforcement to assist with physical behavioral outbursts, (d) failing to provide notice and accommodation to allow N.R. to attend class field trips, and (e) changing N.R.'s school placement. [Dkt. 1, ¶¶ 49-50.]

Each of these alleged retaliatory actions, as their gravamen, amount to an alleged denial of a FAPE and is therefore subject to exhaustion under the IDEA. *See Smith v. Rockwood R-VI School Dist.*, 895 F.3d 566, 568 (8th Cir. 2018) (claim premised on suspension of student with disabilities subject to exhaustion); *Sanchez*, 815 Fed. Appx. at 561 (challenge to IEP subject to exhaustion); *M.S.*, 635 F. App'x at 72 (3d Cir. 2015) (failure to accommodate subject to exhaustion); *Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16, 29 (1st Cir. 2019) (challenge to placement subject to

exhaustion); *see also Fry,* 137 S. Ct. at 756.[6] The fact that the alleged denials of FAPE were done in retaliation does not change the fact that the retaliation claim itself is still subject to exhaustion. Indeed, numerous appellate courts have unequivocally held that retaliation claims are not immune from the IDEA's exhaustion requirements and have upheld the dismissal of such claims for failing to exhaust. *See, e.g.*, *Batchelor v. Rose Tree Media Sch. Dist.,* 759 F.3d 266, 273–74 (3rd Cir. 2014) ("Appellants' retaliation claims are related to the provision of FAPE under *274 20 U.S.C. § 1415(b)(6) and, as such, must be exhausted."); *Rose v. Yeaw,* 214 F.3d 206, 210 (1st Cir.2000) (concluding that retaliation claim "relate[d] unmistakably to the evaluation and educational placement of [a student], ... and to the provision of a free appropriate education..." and was subject to exhaustion); *M.T.V. v. DeKalb Cnty. Sch. Dist.,* 446 F.3d 1153, 1158–59 (11th Cir.2006) ("[R]etaliation claims clearly relate to [the disabled student's] evaluation and education, and, therefore, are subject to the [IDEA's] exhaustion requirement."); *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 52 (1st Cir. 2000) ("Weber had to invoke the due process hearing procedures of IDEA before filing her retaliation claim in federal court.").

Having not exhausted administrative remedies, Plaintiffs' retaliation claim (which is supported by allegations that all, at their core, assert a denial of a FAPE) must be dismissed.

## III. PLAINTIFFS' CLAIM FOR INJUNCTIVE AND DECLARATORY RELIEF MUST BE DISMISSED, AS PLAINTIFFS ARE NOT ENTITLED TO SUCH RELIEF FOR PAST ACTIONS.

As for their claims for relief, Plaintiffs request a declaration that the District previously violated Plaintiffs' (unidentified) civil rights; an injunction barring the District from illegally utilizing physical restraint or seclusion outside of legally permissible circumstances; an injunction

[6] With respect to the allegation that the District took actions to provoke N.R. with the intent of causing further behavioral outbursts, the examples outlined in *Fry* support that this claim is subject to exhaustion under the IDEA. This claim would not have arisen in the context of any other situation other than a school setting because no other situation involves school routines and IEPs. *Fry*, 137 S. Ct. at 756. There could be no similar claim in the context of visiting a public library or theatre. *Id.* Likewise, an adult could not have brought the same sort of claim, because an adult is not subject to control by school officials or IEPs. *Id.*

requiring the District to report all instances of seclusion and restraint as required by law; and an injunction preventing retaliation against Plaintiffs. [Dkt. 1, ¶ 61(a)-(d).] Under well-established precedent, Plaintiffs are not entitled to the relief they seek and their claims must be dismissed accordingly.

In order for a court to grant declaratory relief, there must be an "actual controversy." *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980) (citing 28 U.S.C. § 2201). To determine whether there is an "actual controversy" sufficient for a declaratory judgment, there must be "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941) (citation omitted)). Declaratory relief is not available to adjudicate past, completed actions of a party. *Green v. Mansour*, 474 U.S. 64, 73, 106 S. Ct. 423, 88 L.Ed.2d 371 (1985) (citation omitted). Further, a court cannot grant injunctive relief when there is no continuing wrongful action or violation. *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991).

There is no ongoing controversy between the parties. Rather, Plaintiffs seek a declaration that the District's ***past*** actions violated their civil rights. [Dkt. 1, ¶ 61(a).] Indeed, Plaintiffs have alleged that "N.R. was forced out of New Glarus Middle School at the end of Spring 2019" and "has since attended Common Threads…and has been receiving some of her services…through the Center for Behavioral Intervention…." [Dkt. 1, ¶¶ 54-55.] There is no ongoing relationship pled between the parties and Plaintiffs have not alleged that any of the District's prior actions are ongoing or continuing. As such, they are seeking a declaration of, and injunction for, past actions which is not proper. *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 894 (7th Cir. 2012) ("…declaratory or injunctive relief is only proper if there is a continuing violation of federal law.

When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers." (internal quotation marks omitted; citations omitted). Absent an ongoing controversy between the parties, Plaintiffs' claims for relief must be dismissed.

## IV. To the Extent Any Claims Remain After Disposition of this Motion, Plaintiffs Should be Ordered to Provide a More Definite Statement to Identify Their Claims.

In the event Plaintiffs are permitted to proceed on any of the aspects of their § 1983 claim, Plaintiffs should be required to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e). Specifically, they have asserted a claim for a violation of their "civil rights" pursuant to § 1983, but have not actually pled a discernable claim. In order to state a claim under § 1983, a plaintiff must plead two elements: (1) an action was committed by a person acting under the color of state law and (2) that such action "deprived the plaintiff of rights, privileges, or immunities secured by the Constitution of the United States." *Ellsworth v. City of Racine*, 774 F.2d 182, 186 (7th Cir. 1985) (J. Coffey, concurring). Plaintiffs have merely alleged that their civil rights were violated[7], but failed to identify what rights, privileges, or immunities were purportedly infringed upon. Absent basic information about their pending claims, Defendant is unable to intelligently respond to Plaintiffs' allegations and will be severely prejudiced throughout the course of the litigation (should it be permitted to proceed). *See International Harvester Co. v. General Ins. Co. of America,* 45 F. R. D. 4, 6 (E.D. Wis. 1968) ("The test to be applied, therefore, in deciding this motion is whether the third party complaint is so 'vague or ambiguous' that these movants cannot reasonably be required to frame a responsive pleading. The words 'vague or ambiguous' have been held to mean indefiniteness of facts as well as a lack of clarity and expression.")

[7] Arguably, such a vague legal conclusion fails to state a claim under Fed. R. Civ. P. 12(b)(6) and, to the extent the claim is not dismissed for failing to exhaust, it should be dismissed under Fed. R. Civ. P. 12(b)(6).

Indeed, because Plaintiffs' Complaint is so sparse and only asserts legal conclusions, Defendant could not even identify whether it had a basis to move to dismiss Plaintiffs' claim at this stage – because it was unsure what "civil rights" Plaintiffs claim the District violated. Accordingly, Defendant not only requests a more definite statement under Fed. R. Civ. P. 12(e), but Defendant also reserves the right to file a supplemental or amended motion to dismiss upon clarification of what exactly Plaintiffs are alleging.

**CONCLUSION**

Plaintiffs' unidentified § 1983 claim is premised on the denial of N.R.'s FAPE. As such, the claim is subject to exhaustion under the IDEA. Because Plaintiffs failed to exhaust administrative remedies, the claim must be dismissed with prejudice. To the extent aspects of Plaintiffs' claims are not dismissed for failure to exhaust, Plaintiffs' requests for declaratory and injunctive relief must be denied, as Plaintiffs are not entitled to such relief for past actions. Finally, to the extent any claims remain after the disposition of this pending motion, the Court should order Plaintiffs to file a more definite statement pursuant to Fed. R. Civ. P. 12(e) to address the issues with their current Complaint.

Dated this 16th day of November, 2020.

*s/ Lori M. Lubinsky*

Lori M. Lubinsky, SBN 1072525
Danielle Baudhuin Tierney, SBN 1096371
Attorneys for Defendant
AXLEY BRYNELSON, LLP
P.O. Box 1767
Madison, WI 53701-1767
Telephone: (608) 257-5661
Fax: (608) 257-5444
llubinsky@axley.com / dtierney@axley.com